IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTHELLEN HARRIS, individually and as personal representative of ROBERT JEAN HARRIS, HEATHER HARRIS, JAMIE HARRIS and GREG HARRIS,<br><br>          Plaintiffs,<br><br>     v.<br><br>COSTCO WHOLESALE CORPORATION, WAREHOUSE DEMO SERVICES, INC., and DOES 1-100, inclusive,<br><br>          Defendants.<br>═══════════════════════════════/ | No. C 10-4626 CW<br><br>ORDER DENYING WDS' MOTION FOR SUMMARY JUDGMENT, Docket No. 88, GRANTING COSTCO'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT, Docket No. 90, and GRANTING COSTCO'S UNOPPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CROSS COMPLAINT AS TO EXPRESS INDEMNITY, Docket No. 91. |

     This action arises from the death of Robert Jean Harris.

Plaintiffs have alleged that on June 5, 2010, Harris died after

choking on a sample of tri-tip meat negligently prepared and

served to him by Defendants at Costco Wholesale Corporation Store

#422 in South San Francisco, California.  Pursuant to California

Code of Civil Procedure section 377.30, Plaintiff Ruthellen Harris

is decedent's personal representative.  Plaintiffs Ruthellen

Harris, Heather Harris, Jamie Harris, and Greg Harris also sue

individually as decedent's surviving spouse and children.  See

Cal. Civ. Proc. Code § 377.60.  Plaintiffs' Second Amended

Complaint names Warehouse Demo Services, Inc. (WDS) and Costco

Wholesale Corporation as Defendants, and contains five causes of

action: (1) "Wrongful Death - Negligence" against both Defendants;

**United States District Court**
For the Northern District of California

(2) "Wrongful Death - Products Liability, Negligence" against both Defendants; (3) "Negligent Retention of an Independent Contractor" against Costco; (4) "Negligent Supervision" against Costco; and (5) "Survival Action" against both Defendants.

WDS moves for summary judgment as to the claims against it in the 2AC. Docket No. 88. WDS argues that Plaintiffs cannot establish that it owed a duty to the decedent, Robert Jean Harris, or that the duty, if any, was breached.

Defendant Costco Wholesale Corporation filed a separate motion for summary judgment or, in the alternative, for partial summary judgment. Docket No. 90. In its motion, Costco joined WDS's motion for summary judgment with respect to the first, second and fifth causes of action, asserting that neither WDS nor Costco owed a duty to Harris. As to the causes of action plead only against Costco, Costco asserted that Plaintiffs lacked evidence to support their third cause of action for negligent hiring and the fourth cause of action for negligent supervision of an independent contractor. Plaintiffs have not opposed the motion to the extent that Costco has argued that there is insufficient evidence to show negligent hiring or supervision.

Costco also moved for partial summary judgment on its Cross-Complaint against WDS, in which it asserts that the sole basis for liability against it arises from the decedent's consumption of a food sample prepared by a WDS employee, and that WDS is

contractually liable to Costco for any damages arising out of its work.[1]  Docket No. 91.  WDS has not opposed this motion.

Having considered all of the parties' submissions and oral argument, the Court denies WDS' and Costco's motions for summary judgment as to the first, second and fifth causes of action, grants Costco's unopposed motion for summary judgment as to the third and fourth causes of action, and grants Costco's unopposed motion for partial summary judgment on its Cross-Complaint against WDS.

BACKGROUND

On June 5, 2010, WDS ran a food demonstration table that served Morton's tri-tip samples to customers at the Costco store where the incident at issue occurred.

Deanna Gehrett, a WDS employee, worked at the tri-tip demonstration table that day.  Following instructions provided in the Product Information Form (PIF),[2] Gehrett cut the tri-tip into sample pieces that she said were approximately 1/8 to 1/4 inch thick and one by one inch in dimension.  Declaration of Anthony

---

[1] Costco has alleged the following cross-claims against WDS: (1) express indemnity; (2) breach of contract; (3) contribution and (4) equitable indemnity.

[2] The PIF explained a series of steps to prepare the tri-tip and serve it in samples.  It stated, in relevant part,

> 7. Cut meat across the grain into THIN STRIPS, 1/8 to 1/4 inch thick.
> 8. Cut thin strips into 1 inch by 1 inch pieces and serve. (DO NOT SERVE IN CHUNKS)

United States District Court
For the Northern District of California

Label, Ex. 2, Gehrett Dep. at 17:3-20, 24:4-23; 27:3-6.  The samples were served in a white paper cup with a toothpick.  Id. at 27:21-28:2.  Gehrett testified that at that time she was preparing the samples, she understood it was important to cut the tri-tip samples according to the PIF to prevent a choking hazard.  Id. at 58:21-59:9.  Tamika Grisez, also a WDS employee, testified that, based on the company's training, she was aware that if pieces were cut too large, they could present a choking hazard.  Label Dec., Ex. 14, Grisez Dep. at 27:3-11.

At some point, while Gehrett was cleaning the table, Harris approached her in distress.  Gehrett testified that, at that moment, the demonstration table had been free of tri-tip "on display" and "free of any demonstrations" for about five or ten minutes.  Id. at 75:10-76:5.  However, she also stated that they "had two tri-tips left," and that they had to clean up because they did not want their table to "look messy."  Id. at 29:4-5.

When Harris approached Gehrett, he did not speak, but pointed to his neck and chest, leading her to believe that he was either choking or having a heart attack.  Label Dec., Ex. 2, Gehrett Dep. at 29:19-30:7.  Off-duty firefighter Louis Arzave was also shopping at Costco at the time of the incident.  He performed the Heimlich maneuver and other measures on Harris in an unsuccessful attempt to dislodge the blockage in his airway.

Gehrett testified that she had not seen Harris before he approached her, id. at 76:3-5, and estimated that hundreds of tri-

4

tip samples had been served that day, id. at 65:17-18.  Bystander

Paula Ponce, however, testified that she heard Gehrett screaming

that Harris was choking on a piece of steak.[3]  Label Dec., Ex. 8,

Paula Ponce Dep. at 57:12-22.

The South San Francisco Fire Department responded to the

emergency and took over the efforts to save Harris.  Testimony by

Jeff Cochran, a paramedic and fire fighter with the department,

provides some insight as to the nature of the food that blocked

Harris' airway.  Cochran first used a suction device called a

Yaunker in an unsuccessful attempt to remove the item.  Label

Dec., Ex. 6, Cochran Dep. at 85:15-23.  He was able to suction

smaller pieces of chewed meat, id. at 26:21-24, but was unable to

remove any meat larger than the suction tip.  Id. at 85:6-14.  The

exterior diameter of the suction tip was about the diameter of

Cochran's smallest finger, although he did not testify as to the

size of his finger.  Id. at 85:6-14.  Thus, the inner diameter of

the suction was smaller than his smallest finger.  Id.

Next Cochran used a laryngoscope blade and magill forceps to

clear Harris' airway.  Id. at 26:24-27:24.  In doing so, Cochran

observed "a chewed piece of meat blocking [Harris'] airway

---

[3] Gehrett's statement is not excludable hearsay because it is
an excited utterance or an admission by the opposing party's
employee within the scope of her employment.  Federal Rule of
Evidence 801(d)(2)(D) (an out of court statement is not hearsay if
it is "made by the [opposing] party's agent or employee on a
matter within the scope of that relationship and while it
existed.")

actually completely blocking the back of [his] mouth." Id. at

27:1-5.  Using the magill forceps, Cochran removed the piece of

meat and set it on the ground.  Id. at 29:10-16.  He could not

recall the size of the piece of meat.  Id. at 17-21.

From a distance of about six to ten feet, Arzave observed the

extracted meat on the ground for about ten seconds and identified

it as a piece of tri-tip that looked "exactly like the piece of

meat" that he had sampled five minutes earlier.  Label Dec.,

Ex. 6, Arzave Dep. at 61:2-62:2.  Arazave also stated that he had

sampled a larger than usual piece of tri-tip meat from the

demonstration table.  Id. at 39:7-12.  He testified that the meat

he sampled and the meat that was extracted from Harris was about

three inches by one inch in size.  Id. at 38:16-23.  Neither piece

of meat was a "tiny little square."  Id. at 38:24-25.  According

to Arzave, the meat that Harris choked on looked "intact," and did

not appear as though it had been chewed "forty times," or "worked

over."  Id. at 35:14-25.  Although Arzave testified that he was

not wearing glasses at the time and that he was nearsighted, he

also stated that he did not require glasses to drive and that he

needed glasses to read.  Id. at 34:25-35:13.

Plaintiffs also submit expert evidence in support of their

claims.  Plaintiffs' food safety expert Jeff Nelken attested that

he had attended thirty to forty food demonstration shows where

tri-tip was served.  He opined, based on his observations of tri-

tip samples at food shows and Trader Joe's, and based on his

knowledge of the food-service industry's concern for serving safe food, that the standard of care in the food industry regarding tri-tip steak samples requires that samples be no larger than one inch by one inch wide, and that tri-tip steak samples that are larger than that standard create a potentially dangerous choking hazard.  Nelken attested to his experience and education in detail.  Defendants' objections, asserting that more concrete evidence, such as evidence demonstrating that the food shows concerned food safety, go to the weight of the evidence, rather than precluding the testimony's admissibility.

Plaintiffs' medical expert, Michael Jay Bresler, M.D., an emergency room physician, opined that had the tri-tip sample been the size required by the PIF instructions, the decedent would have been less likely to choke on the sample and the Heimlich maneuver would have been more likely to have dislodged the sample.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as

true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

Defendants first argue that, as a matter of law, they did not owe a duty to exercise reasonable care in serving food samples to Harris and other Costco customers.  The Court rejected this argument in connection with the motion to dismiss Plaintiffs' 2AC. September 13, 2011 Order Denying Defendants' Motion to Dismiss. Plaintiffs have submitted expert evidence that an industry standard of care exists by which tri-tip samples are to be served in pieces no larger than one inch by one inch wide.  A reasonable jury may rely on such evidence to find that WDS had a duty of care to serve samples according to that standard.

Defendants assert that there is no evidence that Harris consumed a tri-tip sample prepared by WDS.  However, Arzave

testified that the food extracted from Harris appeared to be the same tri-trip that he had sampled minutes earlier.  Although Arzave stated that he was "nearsighted," this goes to the weight of his testimony.  A reasonable jury could rely on this testimony to find that Harris choked on meat prepared by WDS.

Plaintiffs have submitted evidence that supports a finding that breach of the industry standard occurred.  Arzave stated that the piece of tri-tip that he sampled was larger than usual and that the meat extracted from Harris was approximately one inch by three inches.  This is evidence that the meat that Harris choked on was larger than the sample size that WDS employees were instructed to prepare.  Based on this evidence, a jury could find that WDS did not serve a reasonably sized piece of meat.

The foreseeability of harm arising from a breach of the duty is supported by WDS employees' testimony regarding the safety risk, as well as Nelken's and Bresler's expert opinions.

Finally, Defendants contend that they may not be held liable because Harris should have chewed his meat.  Defendants assert that California Civil Code section 1714(a)[4] demonstrates that

---

[4] The provision states, in relevant part,

Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

1  decedent's failure to exercise ordinary care in sufficiently

2  chewing the sample, shields them from liability for any negligence

3  they have committed.  Essentially, Defendants assert that section

4  1714(a) establishes a rule of contributory negligence as an

5  available defense.  Under such a rule, contributory negligence "is

6  conduct on the part of the plaintiff which falls below the

7  standard to which he should conform for his own protection, and

8  which is a legally contributing cause cooperating with the

9  negligence of the defendant in bringing about the plaintiff's

10  harm . . . Except where the defendant has the last clear chance,

11  the plaintiff's contributory negligence bars recovery against a

12  defendant whose negligent conduct would otherwise make him liable

13  to the plaintiff for the harm sustained by him."  Li v. Yellow Cab

14  Co., 13 Cal. 3d 804, 809 (1975) (quoting Rest. 2d Torts §§ 463 and

15  467).

16

17      In Li, the California Supreme Court found that, when section

18  1714 was enacted in 1872, it adopted the rule of contributory

19  negligence mitigated by the doctrine of last clear chance.  Id. at

20  819-20.  However, the court further determined that the

21  legislature did not intend to restrict courts from developing

22  negligence concepts according to evolving standards of duty,

23  causation, and liability.  Id. at 821-22.  Accordingly, the court

24  discarded the rule of contributory negligence as a complete

25

26

27  Cal. Civ. Code § 1714(a).

28

defense, and adopted the doctrine of comparative negligence, assessing liability in direct proportion to fault.  Id. at 827.

Summary judgment in favor of Defendants as to Plaintiffs' first, second and fifth causes of action is unwarranted.

CONCLUSION

The Court denies WDS' and Costco's joint motions for summary judgment with respect to the negligence claims alleged against both companies.  Docket Nos. 88 and 90.  The Court, however, grants Costco's unopposed motion for summary adjudication of Plaintiffs' third cause of action for negligent hiring and fourth cause of action for negligent supervision of an independent contractor.  Docket No. 90.  The Court also grants Costco's unopposed motion for partial summary judgment as to its crossclaim against WDS for express indemnity.  Docket No. 91.

Plaintiffs conceded at the April 5, 2012 hearing that they have no remaining cause of action against Costco.

The Court will hold a final pretrial conference for this action on May 23, 2012 at 2:00 pm.  Costco must address how or whether it wishes to proceed on its crossclaims against WDS.  An eight day jury trial will commence on June 4, 2012.  The Court will not be in session on June 12 or 13, 2012.

The parties are to schedule a mediation with the private mediator of their choice at the earliest available date.  The parties shall submit confirmation to the Court that they have

11

scheduled the mediation.  In addition, the parties shall confirm
that they attended the mediation.

IT IS SO ORDERED.


Dated:  4/11/2012

_____
CLAUDIA WILKEN
United States District Judge